**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOMINIC ROUNTREE,** | : | |
| Petitioner, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 22-cv-00637** |
| | : | |
| **LEE ESTOCK,** *et al.,* | : | |
| Respondents. | : | |

**ORDER**

**AND NOW**, this 16th day of September 2024, upon careful and independent consideration of Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) and after review of the Report and Recommendation of United States Magistrate Judge Richard A. Lloret (hereinafter, the "R&R") (ECF No. 21) and Petitioner's Objections (hereinafter, "Objections") (ECF No. 22), **IT IS ORDERED** that:

1. The R&R (ECF No. 21) is **APPROVED** and **ADOPTED**.

2. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 2) is **DISMISSED WITH PREJUDICE.**

3. There is no basis for the issuance of a certificate of appealability.

4. The Clerk of Court shall mark this matter **CLOSED**.

**IT IS SO ORDERED.**

                  **BY THE COURT:**

                  */s/ John Milton Younge*
                  **JUDGE JOHN MILTON YOUNGE**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**:
On review of Mr. Rountree's direct appeal, the Pennsylvania Superior Court adopted an edited version of the trial court's recitation of the facts and testimony:

> In September 2015, [Petitioner] lived in a house with his father, John Rountree ("John"), and [Petitioner's] two brothers, Andre Rountree ("Andre"), and Jacquell Rountree, the decedent. The brothers shared one room in the basement which was separated into three sections by curtains. The decedent shared his section of the basement with his girlfriend, Brittney Clark ("Ms. Clark"), and their two children. On the day of the incident, Andre had moved out of the house. John testified that, when he returned home that day, the decedent, Ms. Clark, their two children, and John's daughter Fatima Rountdree were sitting in the living room. [Petitioner] arrived shortly thereafter and had a conversation with his father in the dining room. The dining room is adjacent to the living room. [Petitioner] told his father that he wanted to use Andre's space in the basement for a short period of time. John told [Petitioner] that he did not want him to take Andre's space. [Petitioner] persisted, going back and forth with his father in his quest to obtain the space until the decedent entered the dining room and told the [Petitioner,] "you heard what dad said." [Petitioner] answered: "I was just talking to dad. Let me and dad talk." [Petitioner] and the decedent began to argue loudly. John walked into the kitchen, which is adjacent to the dining room, to get a sandwich. When he came out to go upstairs, [John] heard [Petitioner] say to the decedent: "I don't want to argue with you no more. I am going." John then went upstairs and ate his sandwich. Approximately two to six minutes later [John] heard shots and Ms. Clark screaming. John then returned downstairs and saw Ms. Clark holding the decedent on the front porch. John went inside and called 911. [Petitioner] left. John further testified that approximately two to four months prior to the instant case, the decedent stabbed [Petitioner] in the face. [Petitioner] had to go to the hospital and returned with bandages in his face. [Petitioner] refused to press charges against his brother. It was John's impression that it was not a serious incident.
>
> Ms. Clark testified that when [Petitioner] was talking to John about using Andre's space in the basement, the decedent interrupted and he and [Petitioner] began to argue. They got into each other's faces, and both went down into the basement. After approximately three to five minutes, the decedent returned to the dining room. Approximately one minute later, [Petitioner] came upstairs. The decedent stood up and said: "What are you going to do with that?" Ms. Clark went to get her son who was sitting in a highchair at the table because she saw [Petitioner] holding a silver gun and putting bullets into it. The decedent then stood in front of Ms. Clark and their son and reached for the gun. He was approximately two to three feet away from [Petitioner] and put his right hand out. The decedent was not trying to attack [Petitioner] but was trying to retrieve the gun. [Petitioner] then took a step back, aimed at the decedent's lower abdomen and shot the gun. The decedent stumbled back and [Petitioner] shot again. The decedent turned and ran toward the front door. [Petitioner] followed the decedent and shot at him a third time striking him in his back. [Petitioner] followed the decedent onto the front porch and began to pistol whip the decedent. [Petitioner] then ran down the steps. Ms. Clark further testified that, on a previous occasion, the decedent had threatened [Petitioner] with a knife, but he was unarmed on the date of the incident. Associate Medical Examiner Dr. Khalil Wardak ("Dr. Wardak") performed the autopsy on the decedent and discussed his findings and conclusions in a document titled, "Death Certificate Information." The

decedent suffered two gunshot wounds, one to the elbow and one to the right lower back. The bullet that entered the back went through the decedent's heart, lung and liver. It was the fatal wound. Dr. Wardak testified that the gunshot wound to the right lower mid-back travelled right to left, back to front, and upward and became lodged in the left, front side of the body. Dr. Wardak noted the location of the entrance, exit and retrieval points of the bullets that struck decedent's body on a body diagram [Exhibit C-36]. This diagram depicted that the bullet that entered from the right mid-back was recovered from the decedent's right front chest. A toxicology test revealed that the decedent had PCP in his blood in the amount of 100 micrograms per milliliter. Dr. Wardak testified that the concentration of PCP in an individual's blood does not reflect the behavior of the individual. Rather, it depends on the mode of use; whether ingested, smoked, or injected, and genetic factors, such as whether the individual is a fast or slow metabolizer. Dr. Wardak opined that the only way to know how the drug affects an individual is to observe their behavior. [Petitioner] testified that he shot his brother in self-defense. He and his brother had a volatile relationship which at times became physical. Approximately one month prior to this incident, the decedent stabbed [Petitioner] in his face requiring [Petitioner] to get stitches. On the evening in question, [Petitioner] was speaking with his father when the decedent interrupted, and an argument ensued. [Petitioner] testified that the decedent got within five feet of him and he could tell the decedent was intoxicated so he left the room and went down to the basement. The decedent followed him downstairs and told him "I will f--- you up" but then went back upstairs. [Petitioner] wanted to go to his mother's house to enlist her aid in quelling the tension. When he went upstairs to leave, the decedent pulled out a knife and popped the switchblade. [Petitioner] retreated to the basement where he grabbed his sister's boyfriend's gun to scare the decedent so [Petitioner] could exit the house. Upon seeing [Petitioner] with the gun, the decedent said, "What the f--- are you going to do with that?" [Petitioner] pulled the slide back and a live round ejected onto the floor. The decedent then jumped toward [Petitioner] and he reacted by firing the weapon. The decedent looked at his arm, where he had been shot, and was still coming toward [Petitioner], so [Petitioner] shot him again. [Petitioner] then tried to get out of the front door and the decedent grabbed him. A tussle ensued which spilled out onto the front porch. [Petitioner] punched the decedent in the head two times and ran away.

*Commonwealth v. Rountree*, No. 951 EDA 2017, 2018 WL 1477205, at *1–2 (Pa. Super. Ct. Mar. 27, 2018) ("Direct App. Op.") (internal citations omitted) (cleaned up).

On November 7th, 2016, a jury found the Petitioner guilty of third-degree murder and possession of an instrument of a crime. (R&R p. 4, ECF No. 21). In January 2017, Judge Rose DeFino-Nastasi of the Philadelphia County Court of Common Pleas sentenced the Petitioner to eighteen to thirty-six years of incarceration and five years of probation. Petitioner filed a post-sentence motion that was denied on February 28th, 2017. *Id*. In 2018, he appealed his conviction to the Pennsylvania Superior Court where his judgment was affirmed. Mr. Rountree then filed an appeal under the Post-Conviction Relief Act which was denied without an evidentiary hearing in 2020. Mr. Rountree then appealed pro se, and after review, the Pennsylvania Superior Court affirmed the PCRA court. Petitioner now brings forth this pro se petition for writ of habeas corpus. *Id*. at 4-7.

**LEGAL STANDARD**:
Where a habeas petition has been referred to the magistrate for a report and recommendation, the district court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge…receive further evidence or recommit the matter to the magistrate judge with

instructions." 28 U.S.C. § 636 (b)(1)(C).  A district court may decline to review a magistrate judge's report and recommendation when neither party has filed a timely objection. *See Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).  Nevertheless, the Third Circuit has held that it is better practice to afford some level of review to dispositive legal issues raised by the report. *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987), *writ denied* 484 U.S. 837 (1987).  When no timely objection is made within fourteen days after being served with the magistrate's report and recommendation, the district court need only review the report and recommendations for plain error or manifest injustice. *See Nara v.* Frank, 488 F.3d 187, 196 (3d Cir. 2007); *Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998)*; Cruz v. Chater,* 990 F. Supp. 375, 375-78 (M.D. Pa. 1998); Fed. R. Civ. P. 72, 1983 Advisory Committee Notes, Subdivision (b).  An error is "plain" if it is clear or obvious. *United States v. Olano*, 507 U.S. 725, 734 (1993).  When timely and specific objections are made, the district court reviews *de novo* those portions of the report and recommendation to which an objection is made.  28 U.S.C. § 636 (b)(1)(C); *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).

Additionally, under the Local Rules of Civil Procedure in the Eastern District of Pennsylvania, magistrate judges must be presented with "[a]ll issues and evidence" such that "unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge." Local R. Civ. P. 72.1 (IV)(c).  When claims are not first presented to the assigned Magistrate Judge, "[a]lthough the Third Circuit has remained silent on the precise issue, the vast majority of authority holds that a district court may refuse to hear [those] claims." *Kirk v. Meyer*, 279 F. Supp. 2d 617, 619 (E.D. Pa. August 18, 2003).

**DISCUSSION**:
Petitioner seeks habeas corpus relief on two grounds. Petitioner claims ineffective assistance of counsel, and prosecutorial misconduct (Objections, p. 7, ECF No. 22). Upon review of these claims, Judge Lloret determined that neither of the Petitioner's claims warrant relief. Because Petitioner's objection to the R&R is deemed timely, this Court will review the dispositive legal issues raised in the R&R.

**A. <u>Ineffective Assistance of Counsel</u>**
Petitioner's claim of ineffective assistance of counsel is comprised of two issues. The first being that Counsel failed to object to the introduction of a body diagram labeled as Exhibit C-36, and the second issue involves counsel's failure to cross-examine the medical examiner, Dr. Wardak. Exhibit C-36 was a demonstrative exhibit that revealed the bullet entering the decedent's (Mr. Jacquell Rountree) right mid-back and being recovered on the right side of the chest. (R&R, p.12, ECF No. 21). However, during the trial, Dr. Wardak the medical examiner testified that the bullet entered through the decedent's right back and was recovered on the left side of the chest. *Id*. Defense counsel did not object to the introduction of such evidence and did not bring up the inconsistency during Dr. Wardak's cross-examination.

Mr. Rountree argues that if counsel had cross-examined Dr. Wardak about the discrepancies regarding the location of the bullet found in the victim's body and the evidence shown in Exhibit C-36, then the jury would have placed less emphasis on the medical evidence. In his objection to the R&R, Petitioner alleges that the State Supreme Court failed to consider the "totality of the availability of mitigation evidence" (Objections to R&R, p. 8, ECF No. 22).

In his Report and Recommendation, Judge Lloret analyzed Mr. Rountree's ineffective assistance of counsel claim using the two-pronged analysis from *Strickland v. Washington*, 466 U.S. 668 (1984). To effectively make out a claim for ineffective assistance of counsel, the petitioner must first "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Next, the petitioner must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair and reliable trial." *Id*.

For the second part of his claim, Petitioner alleges that Defense Counsel was ineffective for failing to cross-examine Dr. Wardak, on the inconsistency in his testimony about Exhibit C-36.

Despite the Petitioner's objections, this Court agrees with the R&R issued by Judge Lloret, in that the Petitioner has failed to sufficiently make out a claim for ineffective assistance of counsel. The Pennsylvania Superior Court did not err in finding that the inclusion of Exhibit C-36 did not have a prejudicial effect on the outcome of Mr. Rountree's trial. Throughout the state court proceedings, the Petitioner did not contest shooting his brother, Mr. Jacquell Rountree, and nor did he dispute that the bullet entered his brother's back. As for the second aspect of his claim, the record further supports that there was more than enough cumulative evidence presented at Mr. Rountree's trial that the trivial inconsistency between Dr. Wardak's testimony and demonstrative Exhibit C-36, does not constitute ineffective assistance of counsel. The bullet's location during the autopsy is immaterial to the self-defense claim. We adopt the R&R's analysis and finding that state's court's analysis was a reasonable and appropriate application of *Strickland*.

### B. <u>Prosecutorial Misconduct</u>

Petitioner additionally alleges a claim of prosecutorial misconduct asserting that the prosecution presented false evidence in introducing Exhibit C-36 and solicited perjured testimony from Dr. Wardak. He further alleges that the prosecution improperly coached the eyewitness to the incident, Ms. Clark.

In order to make out a claim for prosecutorial misconduct, Mr. Rountree must comply with all procedural requirements in order to be eligible for federal habeas review. A procedurally defaulted claim is one that has not been properly presented to the state courts and has no additional state remedies left to pursue. *Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001). A claim may also be procedurally defaulted if it was appropriately raised in state courts, but not addressed on the merits because of an independent and adequate state procedural rule, see *McCandless*, 172 F.3d at 255. Procedural default may be excused if a petitioner can show "cause" and "prejudice" or that a "fundamental miscarriage of justice" would result. *Wegner*, at 224.

In his objection, Mr. Rountree argues that his claim was properly preserved because it merged with the ineffective assistance of counsel claim. However, Mr. Rountree neither preserved his claim for prosecutorial misconduct during his trial proceedings nor did he preserve the same on direct appeal. (R&R, p.19, ECF No. 21). This finding of wavier by the Pennsylvania Supreme Court functions as an independent and adequate state law ground for dismissal of this claim. *Peterson v. Brennan*, 196 F. App'x 135, 142 (3d Cir. 2006). In satisfying the exhaustion requirement, a petitioner must present "the same factual and legal basis for the claim to the state courts." (*Nara vs. Frank*, 488 F.3d 187, 198-99 (3d Cir. 2007).

In his PCRA proceedings, Mr. Rountree only presented Ms. Clark's inculpatory testimony as inconsistent, but never alleged prosecutorial misconduct. As such, Mr. Rountree has not fully exhausted that claim since he never preserved this claim within his trial proceedings, on appeal, or in his PCRA petition. Accordingly, it would be futile do so now, as his opportunity to do so has expired. *Commonwealth v. Elliott*, 80 A.3d 415, 430 (Pa. 2013). Therefore, federal habeas relief is unavailable unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, (1991).

"A failure to consider the claims that will result in a fundamental miscarriage of justice" requires a finding of actual innocence. *Id*. at 748. A finding of actual innocence is warranted when the petitioner can show: "(1) new evidence (2) that is reliable and (3) so probative of innocence that no reasonable juror would have convicted the petitioner." *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012).

Here, Mr. Rountree asserts a new witness that may have potential testimony. This witness, Omar Fisher, is a friend of Ms. Fatima Rountree (decedent's sister) and was arrested five months after the incident, in possession of the gun that Mr. Rountree used to kill his brother, Jacquell. (R&R p. 21, ECF No. 21) Petitioner now states that it was possible for Mr. Fisher to have removed the knife from the house when taking possession of the gun. As such, Mr. Rountree asserts testimony from him could potentially discredit Ms. Clark's testimony that the decedent was unarmed. (R&R, p. 21, ECF No. 21). However, this hypothetical testimony, is not enough to bypass procedural default. The potential testimony from Mr. Fisher is not new, reliable, nor will it be so probative of innocence that no reasonable juror would convict the petitioner. Mr. Fisher was not even present in the home on the date of the incident. Petitioner is requesting the Court to infer about the possibility of Mr. Fisher in having removed a knife from the Rountree residence at the same time he took possession of the gun. This type of speculation concerning what a witness may or may not say is not enough to satisfy as "evidence." Based on this analysis, Mr. Rountree's claim of prosecutorial discretion is procedurally defaulted, and the evidence alleged may not excuse the default.

**CONCLUSION**:
Upon review of Judge Lloret's analysis in his October 26, 2023 Report & Recommendation and this Court's failure to find plain error or manifest injustice within the R&R, this Court approves and adopts the R&R and dismisses with prejudice Petitioner's Petition for Writ of Habeas Corpus.